UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------

ANDY GONZALEZ, RITCHIE BAEZ,
ADHYL POLANCO and PEDRO
SERRANO, individually, and on behalf of
a class of all others similarly situated,

                   Plaintiffs,

     -against-

THE CITY OF NEW YORK, NEW YORK
CITY POLICE DEPARTMENT, THE
MAYOR OF THE CITY OF NEW YORK
BILL de BLASIO, in his individual and
and official capacity, POLICE
COMMISSIONER WILLIAM J. BRATTON,
In his individual and official capacity, NYPD
CHIEF OF DEPARTMENT JAMES P.
O'NEILL, in his individual and official
capacity, NYPD COMMANDING OFFICER
OF PATROL SERVICES, BUREAU CHIEF
CARLOS M. GOMEZ, in his individual and
official capacity, DEPUTY INSPECTOR
CHRISTOPHER McCORMACK, in his
Individual and official capacity,

                   Defendants.
-------------------------------------------------------

Docket No.

**CLASS ACTION
COMPLAINT AND
JURY DEMAND**



     Plaintiffs, Andy Gonzalez, Ritchie Baez, Adhyl Polanco and Pedro Serrano, for

themselves individually and on behalf of all others similarly situated, to wit, latino and

black police officers within the New York City Police Department, (hereinafter,

"Plaintiffs") by and through their attorneys, Nwokoro & Scola, Esquires, allege the

following upon information and belief, against the City of New York, New York City

Police Department, the New York City Police Commissioner William J. Bratton, NYPD

Chief of Department James P. O'Neill, and NYPD Bureau Chief Carlos M. Gomez, and

Deputy Inspector Christopher McCormack. (Hereinafter referred to as "Defendants"):

## PRELIMINARY STATEMENT

1.      This is an action for declaratory and injunctive relief and for compensatory damages to redress the deprivation of rights, and prevent future violations of the same rights which are secured to the plaintiffs by the Civil Rights Act of 1866, 42 U.S.C. § 1981, 42 U.S.C. §1985, the New York State Human Rights Law, New York Executive Law §296; New York City Local Law 59 of 1986, as amended by Local Rule 39 of 1991, §§8-101, et seq,; and New York State Labor Law Section 215-a.

2.      Plaintiffs, Latino and African-American minority Police Officers employed by the New York City Police Department, bring this action against the New York City Police Department for multiple and systemic violations of New York State Labor law Section 215-a, and consequent negative employment actions illegally taken against the plaintiffs including negative evaluations, lost compensation, lost overtime, lost vacations days earned, punitive postings, punitive transfers, denial of upgrades and promotions, denial of overtime and denial of accrued time earned, and for discrimination in their employment on the basis of race, as a result of the imposition of illegal quotas and illegal penalties, which imposition has a disparate effect on the African-American and Latino minority police officers, and which discrimination is in violation of 42 U.S.C. §1981, 42 U.S.C. § 1985, the New York State Human Rights Law, New York Executive Law §296 and New York City Local Law 59 of 1986 as amended by Local Rule 39 of 1991, §§ 8-101, et seq.

3.      Over the past decade and continuing to the present, the NYPD has pursued an un-official policy of directing, instructing, compelling and mandating its employees to perform a mandatory number of arrests, issue a mandatory number of summons or write a

Deputy Chief Michael Marino marched into the precinct at roll call with a deputy inspector and read officers the riot act. "Just try it," a police source quoted Marino as saying. "I'll come down here and make sure you write them." Marino also vowed to transfer people, like he did when he was the commanding officer of the 75th Precinct in East New York. (Rocco Parascandola, *Deputy Chief Michael Marino threatens cops at the 79th Precinct who want to go on summons strike*, N.Y. Daily News December 15, 2010).

11.     In the case of Carolyn Bryant v The City of New York, (Index Number 22011/07-Kings County Supreme Court), during the trial of an action for false arrest, malicious prosecution and police brutality brought against the NYPD, and after hearing testimony from Captain Alex Perez of the 81st Precint of the NYPD to the effect that arrest numbers are a factor in the assessment of police officer performance, a jury in Kings County sitting in February 2011, found as a matter of fact that the NYPD has an un-official quota system. The jury verdict was reported in the New York Daily News of February 19, 2011. (Oren Yaniv, *Court rules that cops do use quotas; woman injured in 2006 arrest settles for $75,000*, N.Y. Daily News. February 19, 2011).

12.     In February 2012, NYPD Officer Craig Matthews, filed a lawsuit against the NYPD alleging the use of a detailed quota system at the 42nd Precint, in the Bronx, which includes regular color-coded computer reports used to track compliance with the quotas. Officers who fail to meet the quotas are highlighted in red ink on the reports and subjected to a wide range of retaliatory actions. Officer Matthews alleges that he repeatedly reported the use of the quota system to the Precint's commanding officers and instead of addressing that problem, they retaliated against him by giving him punitive

integrity tests and interrogations; the imposition of unfounded, unwarranted and overly disciplinary penalties, including but not limited to loss of vacation, suspension, termination, loss of pension, assignments to undesirable and/or particularly dangerous tasks. The disciplinary process of the NYPD, although neutral on its face, has had a disparate impact on minority officers.

20.     Upon information and belief, the defendants have enacted and enforced un-written "productivity standards" or de facto quotas of a certain number of arrests and a certain number of summonses and or violations per month for each NYPD officer. The officers who fail to meet the productivity standards face adverse employment consequences. Upon information and belief, in their efforts to satisfy the productivity standards (meet the quota), NYPD officers have engaged in widespread, suspicion less stops and frisks, improper and baseless arrests, and improper and baseless summonses and/or violations.

21.     Upon information and belief, the improper stops, frisks, arrests, summonses and violations generated by the pressure to comply with illegal quotas, have a negative impact on the community, and a disparate and disproportionately negative impact on minority African-American and Latino community. Upon information and belief, the NYPD targets black and latino communities and black and latino individuals within the five boros of New York in order to obtain the numbers necessary to meet the illegal quotas.

22.     The named plaintiffs herein and the prospective class members are African-American and Latino officers who are under supervisory pressure to meet illegal quota standards by performing racially discriminatory and unwarranted enforcement actions against their own minority community. Plaintiff's failure to meet the illegal quota results

in adverse employment consequences including but not limited to negative evaluations, termination or threat of termination, lost compensation, lost overtime, denial of promotions and upgrades, denial of overtime, loss of vacation days earned, loss of accrued time earned, punitive postings and punitive transfers, suspension, investigations, charges, suspensions, formal and informal discipline, assignments to undesirable and/or particularly dangerous tasks, punitive postings and punitive transfers, all leading and contributing to a hostile working environment and racially disparate treatment of the minority police officers.

23.     Plaintiffs herein and the prospective class members are disproportionately affected by the imposition of illegal quotas and the punitive consequences of the failure to meet the quotas, as opposed to white police officers, because plaintiffs being minorities working in neighborhoods dominated by minority residents, are unwilling to perform racially discriminatory and unwarranted enforcement actions against the minority community. The efforts of the defendants to compel plaintiffs to comply with the illegal quota system has led to a racially unfair and unreasonable performance evaluation system and unfair and unwarranted disciplinary actions and penalties to which the plaintiffs are subjected and to which white police officers are not subjected.

24.     The named plaintiffs and prospective class members who have complained about the illegal quotas and its racially discriminatory application to the minority community face negative employment action from the defendants in the form of unwarranted and improperly conducted charges and disciplinary investigations, and unwarranted disciplinary penalties leading to a hostile working environment and racially disparate

and Rule 57 of the Federal Rules of Civil Procedure.

## VENUE

28.    Venue is proper in the United District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

29.    Plaintiffs demand trial by jury in this action and on each and every one of their claims.

## PARTIES

30.    Plaintiff Sandy Gonzalez is a Hispanic male and a police officer employed by the NYPD who has been under supervisory pressure to comply with the illegal quotas; has suffered negative employment consequences as a result of the failure to meet the illegal quota; has been compelled to work forced overtime and has been penalized for reporting and complaining about the illegal quotas and its racially discriminatory application against the minority community.

31.    Plaintiff Ritchie Baez is a black male of Hispanic heritage and a police officer employed by the NYPD who has been under supervisory pressure to comply with the illegal quotas; has suffered negative employment consequences as a result of the failure to meet the illegal quotas; has been compelled to work forced overtime and has been penalized for reporting and complaining about the illegal quotas and its racially discriminatory application against the minority community.

32.    Plaintiff Adhyl Polanco is a Hispanic male and police officer employed by the NYPD who has been under supervisory pressure to comply with the illegal quotas; has suffered negative employment consequences as a result of his failure to meet the illegal

quotas; has been compelled to work forced overtime, and has been penalized for reporting and complaining about the illegal quotas and its racially discriminatory application against the minority community.

33. Plaintiff Pedro Serrano is a Hispanic male and police officer employed by the NYPD who has been under supervisory pressure to comply with the illegal quotas; has suffered negative employment consequences as a result of the failure to meet the illegal quotas; has been compelled to work forced overtime; and has been penalized for reporting and complaining about the illegal quotas and its racially discriminatory application against the minority community.

34. Defendant the City of New York (the City) is and was at all times relevant hereto, a municipal corporation duly organized and existing under the laws of the State of New York, exercising governmental authority. Defendant is an employer subject to Federal Laws and to the New York State Human Rights Law and New York City Local Law. Defendant City is a person for purposes of 42 U.S.C. §§ 1981 and 1985 and is and was the employer of the named plaintiffs and prospective class members as well as the individually named defendants, at all relevant times.

35. Defendant the New York City Police Department (NYPD) was and is a department, agency, bureau and /or subdivision of the Defendant City. Defendant NYPD is and was at all times relevant hereto, a local government agency of the City of New York and was or is the employer of all the individually named plaintiffs, the prospective class members and the individual defendants herein.

36. Defendant Bill De Blasio is the Mayor of the City of New York. Upon information and belief, Defendant De Blasio has routinely met with the Police

Commissioner; Deputy Police Commissioners and other high ranking members of the NYPD to set policy and make recommendations relating to the polices, administration, practices, customs and procedure of the NYPD and relating to the disciplinary system and implementation of penalties within the NYPD. Defendant DeBlasio knew or should have known of the customs, practices and policies described in this complaint, including but not limited to the maintenance of the illegal quota system by the NYPD and its racially discriminatory effect on the minority community and minority officers including the plaintiffs, and Mayor DeBlasio condoned, ratified and/or authorized such practices and policies.

37.    Defendant William J. Bratton has been the Police Commissioner for the City of New York from January 2014 to the present. Defendant Bratton is an employee of the City of New York and is the principal administrator of defendant NYPD. He is responsible for the application of the NYPD's enforcement and administrative polices including its internal investigatory and disciplinary process. He is the final authority in all disciplinary matters within the NYPD. Police Commissioner William J. Bratton knew or should have known of the customs and practices described in this complaint, including but not limited to the maintenance of the illegal quota system by the NYPD and its racially discriminatory effect on the minority community and minority officers including the plaintiffs and Commissioner Bratton condoned, ratified and/or authorized such conduct.

38.    Defendant James P. O'Neill is the NYPD's Chief of Department and the highest ranking non-civilian police uniformed police officer. Defendant O'Neill is an employee of the City of New York. Upon information and belief, he is in charge of all NYPD

operations answering only to the Police Commissioner and the Mayor. Defendant

O'Neill, knew or should have known of the customs and practices described in this

complaint, including but not limited to the maintenance of the illegal quota system by the

NYPD and its racially discriminatory effect on the minority community and minority

officers including the plaintiffs and Commissioner Bratton condoned, ratified and/or

authorized such conduct.

39.    Defendant NYPD Patrol Bureau Chief Carlos M. Gomez is the NYPD's

commanding officer of patrol services, which includes the precincts. Defendant Gomez

exercised supervisory control over the plaintiffs at all relevant times and participated in

making and executing the policy and practices complained of herein. Defendant Gomez,

knew or should have known of the customs and practices described in this complaint,

including but not limited to the maintenance of the illegal quota system by the NYPD and

its racially discriminatory effect on the minority community and minority officers

including the plaintiffs and defendant Gomez condoned, ratified and/or authorized such

conduct.

40.    Defendant Deputy Inspector Christopher McCormack is and was at all relevant

times, the commanding officer of the NYPD's 40th Precinct located in the south Bronx

where individual plaintiffs Gonzalez, Baez and Serrano, are located.


### STATEMENT OF FACTS
### (Experiences of the named plaintiffs)

41.    Plaintiff Sandy Gonzalez is a police officer within the NYPD's 40th precinct. .

Plaintiff Gonzalez was and is required by his precinct commander and other superiors to

meet a quota of one arrest and twenty summons per month. Plaintiff Gonzalez was

unwilling to meet the quota because he believed that it was unfair, unreasonable, and racially discriminatory against residents of the south Bronx. In 2013, he was penalized for not meeting the quota by being given a low evaluation score of 2.5. He was also penalized by being forced to work, alone, on a fixed post in cold weather at a dangerous location at a time when the NYPD directives were for all patrolmen to have partners. During this posting, plaintiff Gonzalez fell and suffered injury and reported it to his superiors. For not writing enough summons, plaintiff Gonzalez was threatened with negative evaluations and chastised by his precinct commander, Deputy Inspector Christopher McCormack, who stated "on 128[th] Street, you can write 100 C summons, any day". ('C' is for criminal).

42.     For not meeting the quota, plaintiff Gonzalez was penalized by punitive postings, low performance evaluations, denial of overtime, forced overtime and denial of time off. He was placed on performance monitoring, which could have led to termination.

43.     Plaintiff Gonzalez made a formal complaint to his superiors regarding the events stated in paragraphs 41 and 42 above. His superiors retaliated with threats and attempts to humiliate Mr. Gonzalez verbally and by instituting an un-warranted investigation against him regarding his fall. A white police officer who fell under the same circumstances as plaintiff Gonzalez, was not investigated.

44.     Plaintiff Ritchie Baez was employed by the NYPD as a police officer in 2004. He was posted to the 40th precinct in 2005 and remains there till today. In 2013, plaintiff Baez was required by his precinct commander and other superiors to meet a quota of one arrest and twenty summons per month. Plaintiff Baez was unwilling to meet the quota because he believed that it was unfair, unreasonable, and racially discriminatory against residents

of the south Bronx. Plaintiff did not meet the quota in 2013. Plaintiff Baez was penalized for not meeting the quota by being given a low performance evaluation of 2.5. In the year that he received the low evaluation of 2.5, plaintiff Ritchie Baez performed great police work in three instances; In May 2013, Officer Baez assisted a citizen of Spanish descent whose car had been stolen. Officer Baez used his knowledge of Spanish to interview the victim and realizing that time was of the essence, quickly performed a canvass of the immediate neighborhood for the missing vehicle with the result that he immediately found the stolen vehicle and arrested the perpetrator who was charged with Grand Larceny Auto; in October 2013, Officer Baez was helping Housing police provide crowd control duties at 152nd Street, when he recognized a face in the crowd as an accused robber from a wanted poster. During the robbery, the suspect was accused of slashing her victim several times in the face. Acting quickly, Officer Baez promptly apprehended and arrested the suspect; The same year, Officer Baez was assisting a Special Operations Unit during an automobile stop. He observed an individual being interrogated by the Sergeant of the Special Operations Unit. Officer Baez realized that he had seen this individual on a wanted poster as a known gang member being sought by the police. When the individual gave a fictitious name to the Sergeant, Officer Baez alerted the Sergeant and was proven correct by a check of the NYPD records, leading to the arrest of the wanted individual. Despite the above, Plaintiff Baez was given a low performance evaluation in 2013 because his arrest and summons numbers did not meet the quota.

45.     For not meeting the quota, plaintiff Baez was penalized by punitive postings, low performance evaluations, denial of overtime, forced overtime and denial of time off. He was placed on performance monitoring, which could have led to termination. He was

posted to the sky watch posting, which was used by his superiors a the precint, solely as a

punitive posting.

46.     Plaintiff Baez complained to his superiors about the events described in

paragraphs 44 and 45 above and also made a report to OSHA regarding the use of the

Sky Watch as a punitive posting.

47.     Plaintiff Adhyl Polanco was employed by the NYPD as a police officer in 2005.

He was posted to the 41st Precint in 2005. His supervisors required him to meet a quota of

one arrest and twenty summons per month. Plaintiff Polanco was unwilling to meet the

quota because he believed that it was unfair, unreasonable and racially discriminatory

against the minority community. Plaintiff complained about the quota system and

expressed his unwillingness to comply with it. Plaintiff Polanco was penalized for not

meeting the quota with low performance evaluations, punitive postings, denial of time

off, denial of overtime, punitive transfers and forced overtime.

48.     NYPD supervisors at the 41st Precint enforced the quotas through coercion and

threats of job loss. A supervisor was recorded saying about the quota "If you think one

and twenty is breaking your balls, guess what you'll be doing. You are going to be doing

a lot more, a lot more than what they are saying". Another supervisor then stated: "next

week 25 and one, 35 and one, and until you decide to quit this job and go to work at Pizza

Hut, this is what you are going to be doing till then". Officer Polanco recorded these

comments.

49.     Officer Polanco spoke out publicly about the NYPD's maintenance of the quota

system, and in 2009, testified in the Floyd case (federal class action law suit regarding

unconstitutional "stop and frisks" by the NYPD. The defendants have punished Officer

Polanco with unwarranted and improperly conducted disciplinary investigations, including integrity tests and interrogations, and imposed unfounded, unwarranted and overly disciplinary penalties including, loss of vacation and suspension.

50.     Plaintiff Pedro Serrano is a police officer who was posted to the 40th precinct in 2005 and remains there till date. Officer Serrano's supervisors at the 40 precinct required and require him write at least 20 summons and perform one arrest per month. Plaintiff Serrano is unwilling to meet the quota because he believes it to be unfair, unreasonable and racially discriminatory against the minority community. Plaintiff Serrano complained to his supervisors about the quota and failed to maintain the numbers required of him. As a consequence, his supervisors threatened him with negative consequences such as forced overtime on his weekends off, punitive postings, and then carried out those threats.

51.     Plaintiff Serrano experienced first hand the negative effect of the quotas imposed by his supervisors on the minority community where he patrolled in the South Bronx. For his failure to meet the quota, he received a negative performance evaluation. One of his supervisors Executive Officer Materasso, told him that in order for him to get a better evaluation, he must arrest, summon and stop and frisk more people. Plaintiff Serrano explained to Officer Materasso, the deputy commandant of the 40th precinct, that the residents of the 40th precinct are predominantly low income and that he did not feel right about giving them spurious summons. She disagreed and referred to the residents of the 40th precinct as "animals". Plaintiff Serrano, of Puerto Rican origin similar to many residents of the South Bronx, was deeply offended.

52.     In the spring of 2012, while driving by Beekman Avenue and East 141 street, the commandant of the 40th precinct, defendant Christopher McCormack, saw a black person

standing against the wall. In the presence of plaintiff Serrano, Inspector McCormack got

out of his car and walked up to this individual and proceeded to open the black man's

pants. He opened the man's zipper, pulled down the man's pants and exposed the man's

penis. He then grabbed the man's penis and passed his hands between the man's butt

cheeks. Defendant McCormack then pulled out some narcotics and gave it to his driver.

Upon information and belief, Defendant McCormack conducted himself in a similar

manner at other times. Plaintiff Serrano was offended by this conduct.

53.     Plaintiff Serrano reported the illegal quotas and the harassment received from his

superiors for not meeting the quotas, to the Internal Affairs Bureau of the NYPD but

nothing was done about it. Plaintiff Serrano also testified in the Floyd federal class action

lawsuit regarding the use of illegal quotas within his precinct. As punishment, he has

received low performance evaluations, forced overtime, cancelled time off, threats of

termination and punitive postings.


## CLASS ACTION ALLEGATIONS

54.     Plaintiffs bring this action pursuant to Rule 23(a) and (b)(2) of the Federal Rules

of Civil Procedure on their own behalf and on behalf of all other persons similarly

situated.

55.     Plaintiffs class consists of all Hispanic and African-American police officers who

are being compelled and pressured to meet illegal quota numbers in the issuance of

arrests, in the stop and or frisks of citizens and in the arrest of citizens, within the

minority communities targeted by the NYPD, who have been penalized with negative

employment consequences for not meeting said quotas, who have been penalized by

being forced to work overtime on their time off, and who, upon information and belief, have been subjected to discrimination on the basis of color , race or national origin in the form of a hostile work environment, disparate performance evaluation treatment, and disparate disciplinary treatment for having challenged the illegal quota system in the department. Plaintiff's claims are typical of the claims of the other members of the class as they have all been forced, pressured and compelled to meet illegal quotas, have suffered negative employment consequences for not meeting the illegal quotas, have been compelled to perform forced overtime during their scheduled time off and have suffered disparate performance evaluations and disparate disciplinary treatment for their failure to meet the desired quota numbers. Plaintiff's attorneys are qualified and generally able, with extensive experience in employment litigation. For these reasons, plaintiffs will fairly and adequately protect the interests of the class in this action for declaratory and injunctive relief and for compensatory and punitive damages.

56.    The members of this class are too numerous to be joined in one action. Upon information and belief, there are approximately 6000 Hispanic and 5000 African-American police officers who will have been and will be affected by the imposition of the illegal quota system, the negative employment consequences of not meeting the illegal quota system, the imposition of forced overtime on their time off, disparate performance evaluations and disparate disciplinary actions for failure to meet the illegal quota numbers. Upon information and belief, thousands of these officers have already been subjected to the said unlawful conditions.

57.    The questions of law common to the above described class is whether or not the City of New York through the NYPD, compels police officers to comply with illegal

quotas in the performance of arrests, stops and or stop and frisks, and the writing of summonses and tickets and in the performance of their duties contrary to New York State Labor Law § 215-a; whether the City of New York through the NYPD, penalizes police officers for failing to comply with illegal quotas contrary to New York State Labor Law § 215-a; whether the plaintiffs are being fraudulently and illegally forced to work compulsory overtime contrary to the Patrolman's Guide; and whether as a result of being forced to meet illegal quota numbers in their own minority neighborhoods, the plaintiffs have suffered racially disparate performance evaluations and racially disparate disciplinary treatment and whether such conduct by the defendants constitute a deprivation of the rights conferred on the plaintiffs by the Civil Rights Act of 1866, 42 U.S.C. § 1981, 42 U.S.C. §1985, the New York State Human Rights Law, New York Executive Law §296; New York City Local Law 59 of 1986, as amended by Local Rule 39 of 1991, §§8-101, et seq.

58.     Plaintiffs and members of their class meet the requirements of Rule 23(a) of the Federal Rules of Civil Procedure (F.R.C.P.).

59.     The defendants have acted or refused to act, on grounds generally applicable to the class, thereby making appropriate injunctive relief and declaratory relief with respect to the class as a whole, meeting the requirements of Rule 23(b)(2) of the FRCP.


## FACTUAL BACKGROUND COMMON TO ALL CLAIMS FOR RELIEF

60.     Section 215-a of New York State's Labor Law prohibits employers from requiring quotas in the issuance of summons, tickets or number of arrests, and also prohibits employers from penalizing employees for not meeting such illegal quotas or

measuring an employee productivity by a failure to meet a quota. Section 215 of the Labor Law further prohibits employers from penalizing employees for reporting or complaining about the employer's violation of the Labor Law. In direct violation of these provisions, under the leadership of the named defendants, the named plaintiffs and all un-named members of the prospective class have been compelled, instructed, directed and or mandated to perform a certain number of arrests, perform a certain number of stops and or stop and frisks, and issue a certain number of summons, per month. Similarly, the named plaintiffs and members of the prospective class have been punished by the defendants, by being harassed, threatened with termination and other negative consequences, received negative evaluations, lost compensation, lost overtime, lost vacation days earned, punitive postings, punitive transfers, denial of upgrades and promotions, denial of overtime, and denial of accrued time earned, failure to meet the mandated numbers of arrests, stop and or stop and frisks, and the mandated number of summons.

61.    The illegal quota system is used in every work operational unit or sub-unit of the NYPD throughout the five boros of New York and affects all police officers who have to comply or face punitive consequences.

62.    The named plaintiffs and all members of the prospective class have suffered actual damages by being harassed, threatened with termination, given negative evaluations, lost compensation, lost overtime, lost vacation days earned, lost time off, denial of overtime, denial of upgrades, denial of promotions, punitive postings and punitive transfers, all for failure to meet the mandated quota of arrests, stops and summons.

63.    The named plaintiff's and all members of the prospective class are forced to work compulsory overtime during their scheduled time off by a fraudulent system whereby Supervisors insert the names of police officers into overtime schedules titled "Voluntary Overtime" without the consent of the officers and without consulting the officers. This practice is not only fraudulent but is also contrary to the NYPD's Patrolman's Guide (P.G 205-17).

64.    The named plaintiffs and all members of the prospective class have been subjected to disparate and racially discriminatory performance evaluations by the defendants as a means of compelling the Latino and African-American plaintiffs to enforce racially discriminatory quotas in the predominantly minority communities targeted by the NYPD.

65.    The named plaintiffs and all members of the prospective class have subjected to disparate and racially discriminatory disciplinary treatment by the defendants as a means of compelling the Latino and African-American Plaintiffs to enforce racially discriminatory quotas in the predominantly minority communities targeted by the NYPD.


## FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS
**(Claims of named plaintiffs and class members for illegal quotas and penalties imposed on the plaintiffs contrary to Labor Law § 215-a)**

66.    The allegations in paragraphs 1 through 65 above are incorporated herein as if fully set forth below.

67.    The defendant the City of New York, by its police department, the defendant NYPD, and through its agents, the named individual defendants, and the individual defendants in their personal and official capacities, have compelled, instructed, directed

and mandated the plaintiffs to perform a certain number of arrests, perform a certain number of stops and stop and frisks, and issue a certain number of summons, per month. In other words, the defendants have maintained an illegal quota system for police officers for arrests and summonses, and in measuring the productivity of the plaintiffs.

68.     That the defendant, the City of New York, by its Police Department, the defendant, NYPD, and through its agents and employees, the named individual defendants and the individual defendants in their personal and official capacities, have penalized the plaintiffs for failure to meet the illegal quotas by threatening the plaintiffs with termination, giving the plaintiffs negative evaluations, denying the plaintiffs compensation, denying the plaintiffs overtime, denying the plaintiffs vacation days earned, denying the plaintiffs time off, denying the plaintiffs overtime, denying the plaintiffs upgrades, denying the plaintiffs promotions, subjecting the plaintiffs to punitive postings and punitive transfers, and otherwise illegally punishing the plaintiffs by subjecting the plaintiffs to negative employment conditions for failure to meet the illegal quota.

69.     That the defendants actions in maintaining the quota and penalizing the plaintiffs for failing to meet the quota are prohibited by New York State Labor Law, Section 215-a.

70.     That the named plaintiffs and prospective class members have suffered damages as a result of the imposition of the illegal quotas and the punitive actions taken against them for failure to meet the illegal quotas.

## SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS
**(Claims of named plaintiffs and class members against all   defendants for fraudulent forced overtime)**

71.    The allegations in paragraphs 1 through 70 above are incorporated herein as if fully set forth below.

72.    That the defendant, the City of New York, by its police department, the NYPD, and through its agents, the named individual defendants, and the individual defendants in their personal and official capacities, in their employment of the plaintiffs and their administration of the New York City Police Department, have instituted and maintained a fraudulent system of compelling forced overtime during scheduled time off by inserting the names of the plaintiff's into voluntary overtime schedules without the consent of the plaintiffs and without consulting with the plaintiffs.

73.    That the defendants actions in forcing overtime and representing the forced overtime as 'voluntary' overtime is fraudulent and contrary to the Patrolman's Guide.

74.    That as a result of the fraudulently induced false overtime, the plaintiffs have suffered damages in that they are arbitrarily denied earned time off and the company and society of their family and friends.

## THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS
**(Claims of named plaintiffs and class members against all defendants for racially discriminatory employment practices in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981)**

75.    The allegations in paragraphs 1 through 74 above are incorporated herein as if fully set forth below.

76.   The named plaintiffs and members of the prospective class are Hispanic and African-American police officers patrolling in areas where the residents are predominantly minorities as in Latino and African-American.

77.   The illegal quota system maintained by the defendants has a negative effect on the community as it leads to unreasonable and un-warranted arrests, stops, stop and frisks, and summonses.

77.   The illegal quota system implemented by the defendants has a disproportionate and racially discriminatory effect on the minority community because the NYPD targets the minority community to obtain the numbers required by the quota system.

78.   The named plaintiffs and members of the prospective class are unwilling and unable to meet and enforce the illegal quotas on their own minority communities due to its racially discriminatory nature and the fact that it leads to unfair, unreasonable and un-warranted enforcement actions against their own minority community.

79.   The named plaintiffs and all members of the prospective class have been subjected to disparate and racially discriminatory performance evaluations by the defendants as a means of compelling the Latino and African-American plaintiffs to enforce racially discriminatory quotas in the predominantly minority communities targeted by the NYPD.

80.   The named plaintiffs and all members of the prospective class have been subjected to disparate and racially discriminatory performance evaluations by the defendants as a means of compelling the Latino and African-American plaintiffs to enforce racially discriminatory quotas in the predominantly minority communities targeted by the NYPD.

81.     The racially disparate performance evaluations and the racially disparate

disciplinary actions to which the plaintiffs have been subjected to constitute a deprivation

of the rights conferred on the plaintiffs by the Civil Rights Act of 1866, 42 U.S.C. §

1981. Section 1981 provides in pertinent part that "all persons within the jurisdiction of

the United States shall have the same right in every State and Territory to make and

enforce contracts.....and to the full and equal benefit of all laws and proceedings for the

security of persons and property as is enjoyed by white citizens".

82.     A contract of employment exists between each of the plaintiffs and defendants

NYPD and the City of New York, in that the NYPD and each plaintiff agreed that each

plaintiff would be hired by the department to work for it in a specific position described

in the complaint, at a specific average rate, for an indefinite period of time.

83.     Defendants actions as set forth herein prevented plaintiffs and prospective class

members from enjoying and enforcing their employment contract rights on the same basis

as white persons, thereby denying said rights in violation of the Civil Rights Act of 1866,

42 U.S.C. Section 1981, as amended.

84.     Defendants actions had both the intention and effect of depriving plaintiffs of the

rights and benefits of their contractual relationship with the Department on the basis of

their race, color and or national origin.

85.     The named plaintiffs and members of the prospective class have suffered damages

as a result of such deprivation including but not limited to loss of promotions and

upgrades, loss of earned time off, punitive postings, punitive transfers, and the plaintiffs

and class members have suffered distress, humiliation, great expense, embarrassment and

damage to their reputations.

86.     The actions of defendants in depriving plaintiffs of their civil rights as hereinbefore stated, were willful and malicious. As a result of Defendant's reckless and intentional acts, plaintiff and members of their class are entitled to compensatory damages and punitive damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
**(Claims of named plaintiffs and class members against all defendants for racially discriminatory employment practices in violation of 42 U.S.C. §1985 and §1986)**

87.     The allegations in paragraphs 1 through 86 above are incorporated herein as if fully set forth below.

88.     Upon information and belief, Defendants have and continue to conspire with and amongst each other to deny plaintiffs and members of their class the rights, privileges and immunities, and the equal protection of the laws to which they are entitled under the constitution and laws of the United States in violation of 42 U.S.C. Section 1985.

89.     As a direct result of this conspiracy, the defendants injured plaintiffs and deprived them of having and exercising their rights and privileges under the Constitution and laws of the United States.

90.     The actions and omissions of Defendants described herein were willful and malicious and based upon invidious racial and class based animus. The purpose of the aforementioned conspiracy was to violate the civil rights of the plaintiffs and as such, violated 42 U.S.C. Section 1985.

91.     All of the individual defendants, as public officials, had notice of the conspiracy set forth above, in violation of Section 1985 and failed and refused to prevent, prohibit and ameliorate the aforementioned conspiracies notwithstanding their abilities to do so.

Said failure and/or refusal to prevent, prohibit and/or ameliorate constituted a violation of 42 U.S.C. § 1986.

92.     The actions of Defendants, in depriving plaintiffs of their constitutional and Civil Rights as hereinbefore stated, were willful and malicious. As a result of Defendants reckless and intentional acts, plaintiffs and members of their class are entitled to compensatory damages and punitive damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
**(Claims of named plaintiffs and class members against all defendants for racially discriminatory employment practices in violation of New York State Human Rights Law, New York Executive Law §290 )**

93.     The allegations in paragraphs 1 through 92 above are incorporated herein as if fully set forth below.

94.     This claim is brought pursuant to the supplemental jurisdiction of the Court, under New York State Human Rights Law, Executive Law §§ 290 et seq.

95.     Executive Law §290 provides in pertinent part that "the opportunity to obtain employment without discrimination because of race or national origin is hereby recognized as and declared to be a civil right". Executive Law § 296 provides in part as follows "it shall be an unlawful discriminatory practice for an employer ..... because of an individual's age, race, creed, color, national origin.... to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

96.     Plaintiffs are members of a protected class as defined by New York Executive Law §296.

97.    The named plaintiffs and members of the prospective class are Hispanic and African-American police officers patrolling in areas where the residents are predominantly minorities as in Latino and African-American.

98.    The illegal quota system maintained by the defendants has a negative effect on the community as it leads to unreasonable and un-warranted arrests, stops, stop and frisks, and summonses.

99.    The illegal quota system implemented by the defendants has a disproportionate and racially discriminatory effect on the minority community because the NYPD targets the minority community to obtain the numbers required by the quota system.

100.    The named plaintiffs and members of the prospective class are unwilling and unable to meet and enforce the illegal quotas on their own minority communities due to its racially discriminatory nature and the fact that it leads to unfair, unreasonable and un-warranted enforcement actions against their own minority community.

101.    The named plaintiffs and all members of the prospective class have been subjected to disparate and racially discriminatory performance evaluations by the defendants as a means of compelling the Latino and African-American plaintiffs to enforce racially discriminatory quotas in the predominantly minority communities targeted by the NYPD.

102.    The named plaintiffs and all members of the prospective class have been subjected to disparate and racially discriminatory performance evaluations by the defendants as a means of compelling the Latino and African-American plaintiffs to enforce racially discriminatory quotas in the predominantly minority communities targeted by the NYPD.

103.   The racially disparate performance evaluations and the racially disparate disciplinary actions to which the plaintiffs have been subjected to constitute unlawful discrimination on the basis of race and national origin in the compensation, terms, conditions or privileges of employment contrary to the New York State Human Rights Law, New York Executive Law §296.

104.   The named plaintiffs and members of the prospective class have suffered damages as a result of such deprivation.

105.   Plaintiffs and members of the class they represent have suffered and will continue to suffer irreparable injury caused by defendant's illegal conduct.

106.   As a direct and proximate result of defendant's unlawful acts, plaintiffs and members of the class they represent have suffered and will continue to suffer loss income, loss of upgrades and promotions, loss of time earned, forced overtime during scheduled time off, loss of earned time off, and loss of other employment benefits and plaintiffs have suffered and continue to suffer distress, humiliation, great expense, embarrassment and damage to their reputations.

107.   The actions of the defendants in depriving plaintiffs and members of the class they represent of their constitutional and civil rights as hereinbefore stated, were willful and malicious. As a result of defendants reckless and intentional acts, plaintiffs and members of their class are entitled to compensatory and punitive damages in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
**(Claims of named plaintiffs and class members against all defendants for racially discriminatory employment practices in violation of New York City Human Rights Laws)**

108.   The allegations in paragraphs 1 through 106 above are incorporated herein as if fully set forth below.

109.   Defendants NYPD and the City of New York as employers, pursuant to New York City Human Rights Law, have unlawfully discriminated against plaintiffs and members of the class they represent because of their race and national origin in the terms, conditions, and privileges of employment and have penalized and disciplined and otherwise taken adverse action against Plaintiffs in violation of New York City Local Law 59 of 1986 as amended by Local Rule 39 of 1991, §8-207.

110.   Plaintiffs have served a copy of this complaint upon the New York City Commission of Human Rights and the New York City Corporation Counsel.

111.   Plaintiffs and members of the class they represent have suffered and will continue to suffer irreparable injury caused by defendant's illegal conduct.

112.   As a direct and proximate result of defendant's unlawful acts, plaintiffs and members of the class they represent have suffered and will continue to suffer loss income, loss of upgrades and promotions, loss of time earned, forced overtime during scheduled time off, loss of earned time off, and loss of other employment benefits and plaintiffs have suffered and continue to suffer distress, humiliation, great expense, embarrassment and damage to their reputations.

113.   The actions of the defendants in depriving plaintiffs and members of the class they represent of their constitutional and civil rights as hereinbefore stated, were willful and malicious. As a result of defendant's reckless and intentional acts, plaintiffs and

members of their class are entitled to compensatory and punitive damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Claims of named plaintiffs and class members
### for a declaratory judgment)

114.   The allegations in paragraphs 1 through 113 above are incorporated herein as if fully set forth below.

115.   Plaintiffs and all putative class members are entitled to a declaratory judgment that NYPD's current performance evaluation system and or productivity standards for police officers is an illegal quota system in violation of New York State's Labor Law § 215-a

## EIGHT CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Claims of named plaintiffs and class members
### for a permanent injunction)

116.   The allegations in paragraphs 1 through 112 above are incorporated herein as if fully set forth below.

117.   Plaintiffs and all putative class members are entitled to a preliminary and permanent injunction, enjoining defendants the City of New York and the NYPD from using the number of arrests and or the number of summonses performed by a police officer as a performance evaluation standard or a productivity standard.


WHEREFORE, the named Plaintiffs and other members of the class they seek to represent, pray that the Court will:

1).   Issue an order certifying this action as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure in the manner described above herein, with the named Plaintiffs as class representatives;

2).   Issue a class-wide judgment declaring that the NYPD's current performance evaluation system and or productivity standards for police officers is an illegal quota system in violation of New York State's Labor Law § 215-a.

3).   Issue an order permanently enjoining the City of New York and the NYPD from using the number of arrests and or the number of summonses performed by a police officer as a performance evaluation standard or productivity standard.

4).   Issue an order permanently enjoining the City of New York and the NYPD from continuing its racially disparate treatment of Hispanic and African-American police officers in performance evaluations and disciplinary actions.

5).   Award compensatory damages in the first cause of action, to the plaintiffs and their class members, against the defendants for the unlawful negative employment actions taken against them including loss of benefits, loss of earned time off, loss of upgrades and promotions, and loss of overtime.

6).   Issue an order for damages requiring the defendants to reimburse and make whole, any and all plaintiffs and members of their class for any and all benefits they would have received had it not been for defendant's illegal actions including, back pay with interest, benefits and seniority from the time of the Defendant's illegal actions taken against them.

7).   An award of compensatory damages for the pain, suffering, emotional distress, loss of dignity, humiliation and damages to reputation and livelihood endured by named

plaintiffs and members of the class in amounts that are fair, just and reasonable, to be determined at trial;

8).    An award of compensatory damages to the named plaintiffs and the members of their class pursuant to the second cause of action for damages incurred as a result of being improperly forced to work overtime on their scheduled time off.

9).    An award of punitive damages to plaintiffs and members of the class against the defendants, in an amount to be determined at trial.

10).   Award plaintiffs all costs of this action and reasonable attorneys' fees, as provided for in 42 U.S.C. § 1988 and 42 U.S.C. § 1920.

11).   An award to plaintiffs and their class members of such other and further relief as the Court deems appropriate and equitable, including injunctive and declaratory relief as may be required in the interest of justice.

New York, New York
March 2, 2015

NWOKORO & SCOLA, ESQUIRES

By: _____

     Chukwuemeka Nwokoro (CN-1038)
     82 Wall Street – Suite 610
     New York, New York 10005
      (212) 785-1060

     Serhiy Hoshovsky
     Hoshovsky Law Firm
     347 Fifth Avenue, Suite 1009
     New York, New York 10016
     (212) 532-8600

ATTORNEYS FOR PLAINTIFFS